[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING COTERMINOUS NEGLECT AND TERMINATION PETITIONS
The Department of Children and Families (DCF) has filed coterminous neglect and termination of parental rights petitions concerning Jaquawn P., a medically fragile infant who was born on April 13, 1998.
Beverly P., the child's biological mother, is the respondent in this matter. The identity of Jaquawn's biological father is unknown.[1]
In its original neglect petition, which was filed with the court on June 1, 1998, DCF alleged that Jaquawn had been abandoned by his mother, and was uncared for in that the mother's home cannot provide the specialized care which his physical, emotional or mental condition requires. The petition was subsequently amended to add allegations that Jaquawn would be denied proper care and attention physically, educationally, emotionally and morally, and that he would be permitted to live under conditions, circumstances or associations injurious to his well-being.
The coterminously filed petition for termination of parental rights alleged one statutory ground with respect to the mother. This count alleged parental failure to rehabilitate by the parent of a neglected or uncared for child under seven years of age, when the parent's parental rights had previously been terminated with respect to another child.
A trial on these petitions was held on November 16, 1998. Beverly P. was represented throughout the proceeding, but did not attend the trial.[2] DCF, and the minor child, were represented CT Page 14734 by their respective attorneys during this contested hearing. DCF submitted six exhibits into evidence at trial, and introduced the testimony of five witnesses. Counsel for the minor child and counsel for Beverly P. participated fully in the contested hearing but did not offer evidence or testimony.
 FACTUAL FINDINGS
The court, having considered the evidence and testimony adduced at trial, finds that the following facts were proven at trial:
Jaquawn was born on April 13, 1998 at St. Francis Hospital in Hartford. Beverly P. admitted using cocaine and alcohol on the date of delivery. (Testimony of Dr. Hema DeSilva). Both the mother and child tested positive for cocaine after the birth (Petitioner's Exhibit 3). Dr. Hema DeSilva, a pediatrician at St. Francis Hospital, estimated that Jaquawn was born after a gestation period of 24-26 weeks. The child's birth weight was one pound, five ounces, and he was in respiratory distress after his premature delivery (Testimony of Dr. DeSilva). Jaquawn was diagnosed with chronic lung disease, and Dr. DeSilva suspects that he may have suffered neurological damage. (Testimony of Dr. DeSilva).
Jaquawn was transferred from St. Francis to the Connecticut Children's Medical Center (CCMC) in Hartford on September 11, 1998, and he was still at patient there when this trial concluded. (Testimony of Dr. DeSilva and Stephanie Schepis, a pediatric nurse at CCMC). Although it is unclear when the child will be discharged, he may possibly require another month of hospitalization at CCMC. Jaquawn is being fed through a tube, has undergone surgery for a reflux problem, and will require laser surgery in the future. He is in a program at CCMC for children with chronic lung disease. Per Dr. DeSilva, the biological mother spent very little time with the baby when he was hospitalized at St. Francis. This caused Dr. DeSilva to wonder about her commitment to the child. On some occasions when Beverly visited the nursery, she was sober and in control of her faculties. On other times she appeared incoherent and under the influence of alcohol. (Testimony of Dr. DeSilva).
Beverly P. has not visited Jaquawn at CCMC since his transfer there in September. (Testimony of Stephanie Schepis). Once the child is discharged from the hospital, his caretaker must be able CT Page 14735 to feed him through a tube, administer oxygen, and be trained in CPR. (Testimony of Stephanie Schepis). There are concerns that Jaquawn may be suffering from cerebral palsy and/or mental retardation (Testimony of Stephanie Schepis). As a result, the caretaker of this medically fragile child will be required to recognize his limitations and interact appropriately with "early intervention" service providers, such as the "Birth to Three Program." (Testimony of Stephanie Schepis).
The biological mother has an unfortunate and chronic history of alcohol and drug abuse which extends back to 1982 (Petitioner's Exhibit 5, Page 3). As a result, Beverly P. has been consistently unable to parent her children, and has experienced periods of homelessness and incarceration. Her son, Javar P., was born on October 27, 1989 exhibiting symptoms of alcohol withdrawal. When another child, Jakeem P., was born on November 13, 1992, he tested positive for both opiates and cocaine, and displayed the symptoms of fetal alcohol syndrome. (Petitioner's Exhibit 4, Page 3). Beverly P.'s parental rights with respect to both Javar and Jakeem were terminated (pursuant to petitions filed by DCF) on December 10, 1996. Dr. Bruce Freedman, the court-appointed psychologist who conducted an evaluation of the respondent in October 1996 in connection with those TPR proceedings, noted that the mother admitted smoking cocaine two weeks prior to her appointment with him. He wrote that Beverly P. "showed active alcohol and drug abuse and seemed unlikely to enter, stay in or obtain aftercare following substance abuse treatment." (Petitioner's Exhibit 1, Page 7). Dr. Freedman observed that Beverly P.'s interaction with the children at the appointment in 1996 "was one of the worst this psychologist had observed." (Petitioner's Exhibit 1, Page 6). He also opined in 1996 that the biological mother's prognosis for effective rehabilitation within a reasonable amount of time was poor (Petitioner's Exhibit 1, Page 9).
Gregory Hudson, a DCF social worker who was familiar with Beverly P. from earlier referrals, interviewed the respondent in connection with Jaquawn's case. He testified that when he met with the mother in 1994-1996, her problems included drug and alcohol abuse, homelessness and lack of income. The social worker observed that the respondent was still dealing with the same problems when he met with Beverly P. on April 22, 1998. During that interview, the respondent mother told Mr. Hudson that she was using $25-$30 worth of cocaine per day, and that she consumed four or five 40-ounce containers of beer daily. CT Page 14736
The DCF social study (Petitioner's Exhibit 5, Page 3) and Dr. Freedman's evaluation in 1996 (Petitioner's Exhibit 1, Page 3) established that Beverly P. had an extensive history over a number of years of either refusing substance abuse treatment, or of entering detoxification programs, and then failing to comply with aftercare therapy.
 ADJUDICATION (AS TO NEGLECT PETITION)
Beverly P. has not visited Jaquawn at all since his transfer to CCMC on September 11, 1998. Prior to that, she spent very little time with the child in the St. Francis nursery. She has clearly failed to maintain an adequate degree of interest, concern, or responsibility for the welfare of her infant during the more than seven months since his birth. DCF has proven by a preponderance of the evidence the neglect allegation of abandonment.
Jaquawn is a medically fragile infant who will require an extremely high degree of care and attention when he is discharged from hospitalization. His caretaker will be required to feed him by tube, administer oxygen, be trained in CPR, be conscious of his deficits, and interact responsibly with service providers. Beverly P.'s unfortunate history of on-going drug abuse, and inability to parent her children, render her unable to provide the specialized care which his physical and mental condition requires. The mother has not participated in drug treatment, and there is no evidence that she would be even minimally capable of caring for an ill — and potentially handicapped — child. DCF has proven by a preponderance of the evidence that Jaquawn is uncared for, as alleged in the petition.
Similarly, for reasons already cited at length above, the court finds, based upon a preponderance of the evidence, that Jaquawn would be denied proper care and attention physically, educationally, emotionally and morally, and that he would be permitted to live under conditions, circumstances or associations injurious to his well-being, if placed in the care of his biological mother. Accordingly, a finding of neglect as to Beverly P. may also enter on those two counts of the amended petition.
 ADJUDICATION (AS TO TERMINATION PETITION)
CT Page 14737
C.G.S. Section 17a-112(c)(E) provides that the court may find grounds for termination of parental rights where:
 "the parent of a child under the age of seven years who is neglected or uncared for has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the ages and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families."
Jaquawn's date of birth is April 13, 1998. He is slightly more than seven months old. His premature birth and in-utero exposure to alcohol and illegal drugs have caused serious medical problems which will have a far-reaching impact on his life, and the lives of those who will care for him.
Beverly P.'s history of substance abuse extends back to 1982. Her older children, Javar and Jakeem, both suffered physical harm as a result of their mother's substance abuse during pregnancy. Beverly P's parental rights with respect to those children were terminated (pursuant to petitions filed by DCF) on December 10, 1996.
DCF has been involved with the biological mother since around the time her first child was born in 1989. The social study prepared by the petitioner notes that from that time until the present, Beverly P. ". . . has been unable or unwilling to successfully complete drug/alcohol rehabilitation." (Petitioner's Exhibit 5, Page 3). "[Mother] has always refused any form of inpatient treatment program. Other services could not be offered to her because her whereabouts were unknown for extended periods of time." (Petitioner's Exhibit 5, Pages 3 and 4). In June 1998, DCF referred Beverly P. to a residential substance abuse program. The respondent attended the initial interview, but never completed the application process, and did not receive the recommended treatment. (Petitioner's Exhibit 5, Page 5).
Clear and convincing evidence introduced at trial proved that the petitioner made reasonable efforts to locate Beverly P. and reunify her with the child. (Petitioner's Exhibits 5, Page 5 and Petitioner's Exhibit 6). Unfortunately, that same evidence also established that the biological mother is unable, or unwilling, CT Page 14738 to benefit from reunification efforts.
Despite the earlier termination of her parental rights with respect to both Javar and Jakeem, the respondent continued to seriously abuse drugs and alcohol. As the testimony of Social Worker Gregory Hudson established, the mother's overall life situation in April 1998 was basically the same as it had been several years earlier when DCF was involved with those two older children.
DCF social worker Marian Howard reported in the petitioner's social study that Beverly P. had stated that "if we [DCF] weren't going to give her son to her there was no need for her 'to bust her hump. '" (Petitioner's Exhibit 5, Page 4). As noted above, the biological mother's lack of motivation concerning her son is reflected in the fact that she has never visited the child since his transfer more than two months ago to CCMC. She does not function in any manner as a parent for Jaquawn, and evidences no desire to do so.
The court finds, based upon evidence that is clear and convincing, that Beverly P. is unable or unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of Jaquawn, she could assume a responsible position in the life of this child. The court further finds, also based upon clear and convincing evidence, that Jaquawn is under seven years of age, that he has been adjudicated as neglected and uncared for, and that Beverly P.'s parental rights with respect to other children have previously been terminated pursuant to petitions filed by the Commissioner of Children and Families.
 DISPOSITION
Having adjudicated Jaquawn as a neglected and uncared for child, and having found that DCF proved by clear and convincing evidence the alleged statutory ground for termination, the court now addresses the issue of disposition. The court must determine whether or not the petitioner has proven by clear and convincing evidence that termination of parental rights would be in the child's best interests.
Jaquawn's medical condition is so serious that he has been hospitalized for every second of his young life. When the social study was prepared in mid-October, the child weighed five pounds CT Page 14739 nine ounces. (Petitioner's Exhibit 5, Page 4). He suffers from chronic lung disease, and Dr, DeSilva testified that it "will be a miracle" if the child escaped neurological damage. There is the possibility that the child may suffer from cerebral palsy and/or mental retardation. Once discharged from the hospital, he will require a caretaker who can feed him through a tube, administer oxygen (and if necessary, CPR), recognize his limitations, and secure and cooperate with appropriate medical treatment and other intervention.
The record of this case is devoid of any evidence which even remotely suggests that Beverly P. can care for this child now, or in the future. Approximately two years ago, Dr. Freedman described Beverly P.'s interaction with her older children as among the worst he had ever seen. Since then, the biological mother has continued to engage in substance abuse, and her parental rights with respect to Javar and Jakeem were terminated. Since Jaquawn's birth, she has, for the most part, ignored the child. The petitioner has proven by clear and convincing evidence that termination of parental rights is in Jaquawn's best interests.
 STATUTORY FINDINGS
Before this court may enter judgment and dispositional orders in this case, it is required by C.G.S. 17a-112 (e) to make and consider the following written findings:
1. To the extent possible in this case, DCF made timely and appropriate reunification services available to the respondent. These included offers of substance abuse treatment, DCF casework services, and visitation. DCF was hindered in this regard by the respondent's lack of interest in cooperating with rehabilitative services.
2. Under the totality of the circumstances in this case, the court has found by clear and convincing evidence that DCF made reasonable efforts to reunite the family in accordance with the federal Adoption Assistance and Child Welfare Act of 1980. The court also found, based upon clear and convincing evidence, that Beverly P. demonstrated an unwillingness, or an inability, to benefit from such reunification efforts.
3. There was no evidence at trial concerning court orders in this case. it is clear to the court, however, that Beverly P. CT Page 14740 reasonably should have known that she needed to obtain substance abuse treatment and visit her child in order to pursue the possibility of reunification, and avoid potential termination of her parental rights.
4. The court is unaware of the feelings and emotional ties which the child may have for the hospital staff who have cared for him since the day he was born. The child's mother has never cared for the child. She visited him sporadically when he was in St. Francis Hospital, and has never visited him since his transfer to CCMC in September 1998. The court finds it improbable that the child knows his biological mother, or has developed any type of tie or bond with her.
5. Jaquawn is now more than seven months old. His date of birth is April 13, 1998.
6. Beverly P. has not made any discernible effort to adjust her circumstances, conduct or conditions in order to make it in the best interests of the child that he be returned to the biological mother's home within the foreseeable future.
7. No unreasonable act or conduct or any person or entity, and no adverse economic circumstance, has prevented Beverly P. from maintaining a meaningful relationship with Jaquawn.
 JUDGMENT AND ORDERS
The court has adjudicated Jaquawn P. as a neglected and uncared for child. The court has further found that DCF proved by clear and convincing evidence the statutory ground alleged for termination of parental rights. The court has made and considered the seven findings mandated by C.G. S. 17a-112 (e), and has found, based upon clear and convincing proof, that termination of parental rights would be in the child's best interests.
Accordingly, the court hereby ORDERS that the parental rights of Beverly P. in and to Jaquawn P. be, and hereby are, terminated. The court further orders that the commissioner of the Department of Children and Families be appointed the statutory parent of said child, for the purpose of placing him in adoption, or securing other appropriate permanent placement. Said Commissioner is ordered to file a written report with this court, detailing the progress which has been made towards adoption, within 90 days of the date hereof. In the event CT Page 14741 that Jaquawn has not been adopted within six months from the date hereof, said Commissioner shall file a motion for Review of Plan for Terminated Child with the court.
Judgment may enter accordingly.
BY THE COURT:
Dyer, J.